JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

STEFANIE BOONE

**(b)** County of Residence of First Listed Plaintiff: KENT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
MATTHEW S. DePERNO, 951 W. MILHAM AVENUE, PO BOX 1595, PORTAGE, MI 49081, (269) 491-0213

## DEFENDANTS

EDUSTAFF, LLC

County of Residence of First Listed Defendant: KENT
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [X] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [X] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. § 2000e et seq.

Brief description of cause:
Violation of Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. ("ELCRA").

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______________________ DOCKET NUMBER ______________________

DATE: Aug 31, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Matthew S. DePerno

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

STEFANIE BOONE

Plaintiff,

Case No. ______________________

v.

EDUSTAFF, LLC, a Michigan limited liability company

HON. __________________________

Defendant.
________________________________/

**VERIFIED COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, STEFANIE BOONE ("Plaintiff" or "Boone"), by and through her attorneys, DePERNO LAW OFFICE, PLLC, and for her Complaint against Defendant EDUSTAFF, LLC ("EduStaff" or "Defendant"), hereby alleges and states as follows:

**NATURE OF THE ACTION**

1. This is an action to redress Defendant EduStaff's unlawful discrimination and retaliation against Plaintiff on the basis of her religion, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. ("ELCRA").

2. Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 17, 2024, within 300 days of the unlawful employment practices alleged herein.

3. Plaintiff received the EEOC's Notice of Right to Sue, dated June 2, 2026. Plaintiff files this Complaint within 90 days of that receipt.

4. This Complaint addresses Plaintiff's claims against EduStaff only. Plaintiff's related claims against other parties arising in part from the same underlying events are not affected by, and are reserved for separate proceedings not governed by, the EEOC right-to-sue deadline applicable to this Complaint.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 28 U.S.C. § 1331 (federal question) and 1343 (civil rights jurisdiction), and jurisdiction over the Title VII claims under 42 U.S.C. § 2000e-5(f)(3).

6. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state-law ELCRA claims, which arise from the same case or controversy as her federal claims.

7. Venue is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the events giving rise to this action occurred within, and Plaintiff would have worked within, the Western District of Michigan.

## PARTIES

8. Plaintiff Stefanie Boone is an individual and adult resident of Ada, Michigan.

9. Defendant EduStaff, LLC is a Michigan limited liability company with its principal place of business at 4120 Brockton Dr. SE, Suite 200, Grand Rapids, Michigan 49512. At all relevant times, EduStaff was Plaintiff's employer within the meaning of Title VII and ELCRA.

## STATEMENT OF FACTS

10. EduStaff is an educational staffing agency that partners with K-12 school districts, including Forest Hills Public Schools ("FHPS") and Lowell Area Schools ("LAS"), to recruit, hire, and manage substitute teachers and support staff.

11. At all relevant times, Plaintiff was a certified teacher and an employee of EduStaff.

12. EduStaff operates an application called "Red Rover" through which its employees may search for and accept substitute teaching assignments with partner districts, including FHPS and LAS.

13. Since the fall of 2020, Plaintiff has been an outspoken conservative Christian and advocate against certain school board policies at LAS and FHPS that she believes violate and conflict with her deeply held religious convictions, including the introduction and distribution of certain books ("LGBTQ+

Storybooks") that Plaintiff contends promote one-sided transgender ideology, encourage gender transition, and focus on sex and drug use, without parental notification or the opportunity to opt out.

14. Plaintiff's children have attended LAS and FHPS, and she presently has two children attending LAS.

15. Plaintiff holds a sincere religious conviction that the LGBTQ+ Storybooks are age-inappropriate and inconsistent with her religious beliefs, practices, and child-raising philosophy.

16. Some of the books at issue that are available to children through the school libraries include the following:

(1) *What Girls Are Made Of* by Elana K. Arnold is a book that contains explicit sexual nudity and sexual activities. It details a young woman's journey through abortions, sex, and masturbation with description in graphic detail.

(2) *All Boys Aren't Blue* by George M. Johnson is a book about sex, drug use, and instructs that gender is a construct of society, not a reality, and that boys can be girls and girls can be boys.

(3) *Nineteen Minutes* by Jodi Picoult is a book that pushes "LGBTQ-inclusive" themes.

(4) *Tilt* by Ellen Hopkins is a book that includes sexually explicit language and sexual assault involving minors. The book tells the story about three different teenagers. One becomes pregnant, the second gets into a relationship with a boy who is HIV positive, and the third falls in love with an older boy, changes her appearance to get his attention but ends in self-destruction.

(5) *The Sun and Her Flowers* by Rupi Kaur is a collection of poems with graphic sex, assault, and abortion. This books states that "virgin praising is rape culture."

(6) *Me and Earl and the Dying Girl* by Jesse Andrews tells the story of an awkward high school student, his best friend, and their terminally ill classmate. It contains graphic depictions of cunnilingus.

(7) *Tricks* by Ellen Hopkins tells the story of five troubled teens and contains graphic scenes of child rape and abuse, graphic violence, and child prostitution.

(8) *Romeo and or Juliet*, by Ryan North is a choose your own sex adventure. The end of the book contains a link to a website that includes comics where kids can learn about gender bending, trans

issues, vibrators, dildos, anal toys, penis toys, lubes, barriers, harnesses, packing, BDSM, and porno sites.

17. Plaintiff has posted comments on social media, and has spoken during the public comment period at LAS and FHPS school board meetings, county commissioner meetings, and State Board of Education meetings, regarding her concerns about the LGBTQ+ Storybooks and her religious convictions.

18. During these public comments, Plaintiff has shared her conservative, Christian perspective on education. She has spoken respectfully, calmly, factually, and professionally, and has not threatened anyone.

19. Plaintiff has spoken privately with LAS and FHPS officials and administrators about her concerns regarding the LGBTQ+ Storybooks and related school board policies.

20. For these reasons, Plaintiff sought to substitute teach in LAS, where her family resides, and FHPS, from which she graduated.

21. Plaintiff completed EduStaff's application and hiring process, including a background check and fingerprinting, and was hired by EduStaff on September 9, 2024, and was cleared to accept substitute teaching assignments at that time.

22. Once hired, Plaintiff selected LAS and FHPS as her "favorite" districts within EduStaff's Red Rover system, and her access to postings from both was approved on September 9, 2024.

23. On September 11, 2024, Plaintiff used Red Rover to request a substitute teaching assignment with LAS at Lowell Middle School for September 13, 2024. On September 12, 2024, EduStaff notified Plaintiff that the assignment had been cancelled.

24. Plaintiff immediately accepted another LAS assignment for September 13, 2024. That morning, EduStaff notified her that this assignment, too, had been cancelled.

25. Plaintiff then discovered an email from LAS Superintendent Nate Fowler, sent at 6:00 a.m. on September 13, 2024, stating "Based on our technology use policy and concerns about creating a disruption to the school environment, we do not need your services as a substitute teacher."

26. At 6:56 a.m. that morning, Plaintiff emailed Fowler requesting clarification, noting she had not yet worked a single day in the district and asking him to explain the basis for his concerns. She received no response, and on September 14, 2024, her ability to accept LAS jobs through Red Rover was revoked.

27. On September 14, 2024, Plaintiff opened a support ticket with EduStaff asking why she had been removed from the LAS position. She sent a detailed follow-up stating: "I have been a vocal, concerned parent, about some of the things we are seeing go on in our children's schools, however I have a clean background, excellent teaching experience, am well qualified, and was approved through EduStaff. Just

because we may not see eye to eye on everything shouldn't mean I cannot teach in my children's schools, correct?" Plaintiff received no response.

28. Meanwhile, Plaintiff accepted a substitute teaching assignment at Forest Hills Northern High School (her alma mater) through Red Rover, for September 17, 2024.

29. Within minutes of arriving in her assigned classroom on September 17, 2024, Plaintiff was directed to report to the administrative office, where she met with Christine Annese, FHPS's Assistant Superintendent of Human Resources.

30. Annese, purporting to act on behalf of FHPS and EduStaff, terminated Plaintiff's substitute teaching assignment and informed her that FHPS would not use her services again, citing two purported incidents: (a) comments Plaintiff made during the public comment period of an April 2022 FHPS board meeting; and (b) an allegation that Plaintiff had photographed a student and posted the photograph on social media, an allegation Plaintiff denies and which Annese was unable to substantiate with any factual evidence, as reflected in Plaintiff's contemporaneous recording of the conversation.

31. Plaintiff's remaining FHPS substitute assignments were cancelled, and her ability to accept FHPS jobs through Red Rover was immediately revoked.

32. Plaintiff called EduStaff on September 17, 2024, and was connected to Jodi Center directly. Center stated that EduStaff had received several reports about

Plaintiff and had seen evidence that demonstrates a lack of respect for, and disregard of, school standards. Center stated that she had sent Plaintiff an email earlier that day and then described to Plaintiff what the mail said. Center directed Plaintiff to stop sharing personal opinions or beliefs which a student could construe as offensive, disparaging, or unduly influencing or persuasive on a sensitive subject. She mentioned specifically listing religion, politics, current events, race, color, national origin, age, sex, gender identity, sexual orientation, and disabilities.

33. During that call, Plaintiff asked for an accommodation that she be permitted to substitute teach and would not express any views regarding LGBTQ+ Storybooks, religion, politics, current events, race, color, national origin, age, sex, gender identity, sexual orientation, and disabilities while in the classroom. Center rejected her request and told Plaintiff that her exclusion was based on "various community members and staff who have reached out to her with concerns about [Plaintiff]," and that it was based around Plaintiff's "opposition to inclusion." Center stated that Plaintiff should read her email from earlier that day and that the email was a "reminder" that "if [Plaintiff] continue[d] in the direction that [she had] been headed, there will be further action taken," and that Center "viewed [Plaintiff's] call to her as a threat."

34. EduStaff took no steps to independently investigate or verify the reports and complaints relayed to it, and never responded to the specific accommodation

Plaintiff had proposed to Jodi Center, before terminating Plaintiff's employment and revoking her Red Rover access to both districts.

35. After the phone call, Plaintiff located the email, titled "Edustaff expectations," in her spam folder. It was sent on September 17, 2024, at 2:04 p.m. The email in some way mirrored the telephone conversation and stated that EduStaff had "received several reports stating concern of [Plaintiff's] recent hire" and had "seen evidence that demonstrates a lack of respect for, and disregard of, school standards." It directed Plaintiff to "refrain from sharing personal opinions or beliefs which a student could construe as offensive, disparaging, or unduly influencing or persuasive on a sensitive subject," specifically listing "religion, politics, current events, race, color, national origin, age, sex, gender identity, sexual orientation, and disabilities."

36. On September 19, 2024, Plaintiff responded to Center by email, asking Center to identify who had made the "several reports" and what specific "evidence" was being relied upon. Plaintiff received no substantive response.

## COUNT I
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, et seq.
## RELIGIOUS DISCRIMINATION

**(Disparate Treatment, and in the Alternative, Failure to Accommodate)**

37. Plaintiff restates and incorporates by reference all preceding paragraphs.

38. Title VII prohibits an employer from discriminating against an employee "because of such individual's religion." 42 U.S.C. § 2000e-2(a)(1).

39. Plaintiff holds sincere religious beliefs regarding the LGBTQ+ Storybooks and related school policies, of which EduStaff was aware no later than September 17, 2024.

40. EduStaff terminated Plaintiff's employment and revoked her Red Rover access at least in part because of Plaintiff's religious beliefs and her expression of those beliefs, as reflected in EduStaff's own September 17, 2024 email identifying "religion" among the "sensitive subjects" Plaintiff was directed to stop discussing, and in Jodi Center's statement that Plaintiff's termination was based on her "opposition to inclusion."

41. In the alternative, even if the decision to exclude Plaintiff originated with third parties, EduStaff was the direct and proximate cause of Plaintiff's termination because it adopted and effectuated, without independent investigation, complaints relayed to it by others motivated by opposition to Plaintiff's religious viewpoint. See *Staub v. Proctor Hosp*., 562 U.S. 411 (2011).

42. EduStaff has offered no legitimate, non-discriminatory explanation for Plaintiff's termination that withstands scrutiny; it has never identified the "several reports" or "evidence" referenced in its September 17, 2024 email despite Plaintiff's repeated requests.

43. In the further alternative, EduStaff's directive that Plaintiff "refrain from sharing personal opinions or beliefs" regarding "religion" and other sensitive subjects directly conflicted with Plaintiff's sincere religious practice of sharing her Christian convictions regarding the LGBTQ+ Storybooks. Plaintiff informed EduStaff of this conflict and proposed a specific reasonable accommodation to Jodi Center that she be permitted to continue substitute teaching on the condition that she not express her views regarding the LGBTQ+ Storybooks during any teaching assignment, and separately raised the conflict in her September 19, 2024 correspondence and call with Jodi Center. Defendant rejected Plaintiff's proposed accommodation and failed to engage in the interactive, "bilateral cooperation" required to identify a reasonable accommodation. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

44. The accommodation Plaintiff proposed (permitting her to substitute teach while refraining from expressing her personal views on the LGBTQ+ Storybooks during any assignment) was reasonable and available to EduStaff without undue hardship. EduStaff never explained why this or any other accommodation was impossible.

45. As a direct and proximate result of EduStaff's conduct, Plaintiff has suffered emotional distress, humiliation, embarrassment, loss of reputation, lost

wages and benefits, and other damages, and will continue to suffer such damages in the future.

46. EduStaff's conduct was intentional and/or in reckless disregard of Plaintiff's federally protected rights.

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, et seq.**

**RETALIATION**

47. Plaintiff restates and incorporates by reference all preceding paragraphs.

48. Title VII prohibits retaliation against an employee for opposing a practice made unlawful under Title VII or for requesting a religious accommodation. 42 U.S.C. § 2000e-3(a).

49. Plaintiff engaged in protected activity when she proposed a specific religious accommodation to Jodi Center that she be permitted to continue substitute teaching while refraining from expressing her religious views on the LGBTQ+ Storybooks during any assignment and when she further requested accommodation and opposed what she reasonably believed to be religious discrimination, in her September 19, 2024 email and her call with Jodi Center.

50. EduStaff retaliated against Plaintiff by terminating her and revoking her Red Rover access without ever responding to her proposed accommodation.

51. As a direct and proximate result, Plaintiff has suffered emotional distress, humiliation, embarrassment, lost wages and benefits, and other damages, and will continue to suffer such damages in the future.

52. EduStaff's conduct was intentional and/or in reckless disregard of Plaintiff's federally protected rights.

**COUNT III**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT,**
**MCL 37.2101 et seq.**

**RELIGIOUS DISCRIMINATION**

**(Disparate Treatment, and in the Alternative, Failure to Accommodate)**

53. Plaintiff restates and incorporates by reference all preceding paragraphs.

54. ELCRA prohibits an employer from discriminating against an employee because of religion. MCL 37.2202(1)(a).

55. Plaintiff holds sincere religious beliefs regarding the LGBTQ+ Storybooks and related school policies, of which EduStaff was aware no later than September 17, 2024.

56. EduStaff terminated Plaintiff's employment and revoked her Red Rover access at least in part because of her religious beliefs and their expression, for the same reasons alleged in Count I.

57. In the alternative, EduStaff is liable because it adopted and effectuated, without independent investigation, complaints relayed to it by others motivated by opposition to Plaintiff's religious viewpoint.

58. In the further alternative, EduStaff failed to reasonably accommodate the conflict between Plaintiff's sincere religious practice and EduStaff's directive that she refrain from sharing her religious views, notwithstanding Plaintiff's specific proposed accommodation to Jodi Center described above, and failed to engage in bilateral cooperation to identify an accommodation. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

59. The accommodation Plaintiff proposed was reasonable and available without undue hardship. EduStaff never explained why it, or any accommodation, could not be provided.

60. As a direct and proximate result of EduStaff's conduct, Plaintiff has suffered emotional distress, humiliation, embarrassment, loss of reputation, lost wages and benefits, and other damages, and will continue to suffer such damages in the future.

61. EduStaff's conduct was intentional and/or in reckless disregard of Plaintiff's rights under Michigan law.

## COUNT IV
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

## RETALIATION

62. Plaintiff restates and incorporates by reference all preceding paragraphs.

63. ELCRA prohibits retaliation against an employee who opposes a violation of the Act or requests a religious accommodation. MCL 37.2701(a).

64. Plaintiff engaged in protected activity by when she proposed a specific religious accommodation to Jodi Center and when she further requested accommodation and opposed what she reasonably believed to be religious discrimination.

65. EduStaff retaliated against Plaintiff by terminating her and revoking her Red Rover access.

66. As a direct and proximate result, Plaintiff has suffered emotional distress, humiliation, embarrassment, lost wages and benefits, and other damages, and will continue to suffer such damages in the future.

67. EduStaff's conduct was intentional and/or in reckless disregard of Plaintiff's rights under Michigan law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Stefanie Boone, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant EduStaff, LLC, and award:

a. Back pay and lost benefits;

b. Compensatory damages for emotional distress, humiliation, embarrassment, and reputational harm;

c. Reinstatement of Plaintiff's Red Rover access, or front pay in lieu thereof;

d. A declaration that Defendant's conduct violated Plaintiff's rights under Title VII and ELCRA;

e. Injunctive relief prohibiting further retaliation against Plaintiff;

f. Pre- and post-judgment interest;

g. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § § 2000e-5(k) and MCL 37.2802; and

h. Such other relief as the Court deems just and equitable.

Respectfully submitted,

DePERNO LAW OFFICE, PLLC

DATED: August 31, 2026

_______________________________

Matthew S. DePerno (P52622)
Attorney for Plaintiff
PO Box 1595
Portage, MI 49081
(269) 491-0213

# VERIFICATION

I, STEFANIE BOONE, being first duly sworn, depose and state that I am the Plaintiff in the above-captioned matter, that I am familiar with the facts alleged herein, and that the foregoing Verified Complaint is true to the best of my knowledge, information and belief.

Dated: August 31, 2026

Stefanie Boone
STEFANIE BOONE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

STEFANIE BOONE

Plaintiff,

v.

EDUSTAFF, LLC, a Michigan limited liability company

Defendant.
________________________________/

Case No. ______________________

HON. _________________________

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff, STEFANIE BOONE, demands a trial by jury on all issues so triable.

Respectfully submitted

DePERNO LAW OFFICE, PLLC

Dated: August 31, 2026

________________________________
Matthew S. DePerno (P52622)
Attorney for Plaintiff
PO Box 1595
Portage, MI 49081
(269) 491-0213